## Ambler's Appeal.

The fact that a strip of land occupied by the owner of a farm as a lane for passing from one part of the farm to another is not an "established road or way" within the act of February 19, 1849, but that the owner has the same right to it as to any other part of his farm and may change it at will, prevents his maintaining a suit to enjoin a railroad company from carrying its road across such lane, but does not preclude his recovering whatever damages he may sustain by reason of the taking of the land.

(Decided May 3, 1886.)

Appeal from a decree of the Common Pleas of Montgomery County in equity. Affirmed.

The bill in this case was filed by Mahlon R. Ambler against the Pennsylvania Schuylkill Valley Railroad Company, praying for an injunction restraining the company from building an embankment for its tracks across a way which it alleged had been opened upon his farm, the building of which, it was alleged, would result in the closing of the way.

The following are the facts as found by the master.

Note.—Streets regularly laid out and approved by the court are established ways, within the meaning of the act, though not fully opened. Chester v. Baltimore & P. R. Co. 140 Pa. 275, 21 Atl. 320; Norristown v. Philadelphia & R. R. Co. 10 Pa. Dist. R. 539. But a street provided for in partition proceedings, but never formally dedicated or opened is not. Phillips v. St. Clair Incline Plane Co. 153 Pa. 230, 25 Atl. 735.

The plaintiff owns, and has owned for about forty years, a farm in Upper Providence township, Montgomery county, containing 180 acres of land.    The farm is situated at the mouth of the Perkiomen creek where it empties into the Schuylkill river. There are on the farm a mansion house and barn, and two small tenant houses near the Schuylkill river, and a ferry across the river.    For the convenient use of the farm there is a roadway leading from the barn, down along by the fence which divides the fields from the Schuylkill river.    There are bars across this roadway where the fence dividing the fields crosses it.    When they are hauling hay or grain from the fields near the Schuylkill river to the barn, instead of driving across the middle of the fields they go along this roadway by the fence, through the bars, up to the barn.    So those living in the tenant houses, or anyone going from the barn to the tenant houses, use this roadway along the fence, so as not to unnecessarily trample down the grass by crossing the fields.    This roadway has only a fence on one side from the barn to the river, that fence being the division between the fields, and is wholly on plaintiff's farm for the uses and purposes above described, and is not used in connection with the ferry.

The defendant laid its railroad across this roadway and by so doing has rendered it impassable where the railroad crosses it.

The plaintiff can, however, use the old road at the crossing, by going down the railroad 50 panels of the fence, then crossing under the trestle bridge of the railroad company therein, returning the same distance up along the railroad to the old road.

At certain seasons of the year, when the water in the Perkiomen creek is high, the crossing under the trestle bridge is rendered impassable by the high water.    It is also sometimes rendered impassable by the ice.    At other times the old road can be now used for every purpose for which it has been heretofore used, with the exception that at the place where the railroad crosses it it is now necessary to go the distance of about 100 panels of fence to get across the railroad as above described. Under these circumstances the plaintiff asks the aid of the court of equity to restrain the defendant from impeding or in any manner interfering with his established way.

Taking in a load of hay along this way to the barn, the driver riding the horse and the helper being on the load of hay, would be literally transporting persons and property along this

way; but we think it is not such a "passage or transportation of persons or property" as the act of February 19, 1849, § 12, prevents the construction of a railroad from impeding.

The plaintiff avers in his bill, as a further ground of equitable relief, that the defendant, through its agent, agreed with the plaintiff that if the plaintiff would accept from the railroad company a bond in $6,000, to secure the damages which the plaintiff might sustain by reason of the railroad being located through his farm, the defendant would make a permanent trestle over his way which would not interfere with its use.

This agreement is not established by the evidence.

The master recommended that the bill be dismissed. Exceptions were filed to his report, which were overruled by the court below, and the bill was dismissed; whereupon the plaintiff appealed.

*Charles Hunsicker,* for appellant.—Bouvier, vol. 2, p. 657, thus defines a way: A passage, street, or road.

This, then, is the primary significance of the term "way."

It is true that many of the text-writers never consider any other kind of way than the kind one man has over the land of another.

But even if this rule was to be enforced, the right of Ambler to pass over his way would still remain, for he wants to and has a right to pass over the land taken from him by the railroad; and he comes within the secondary division of the right to a way across the land of another.

In Kieffer v. Imhoff, 26 Pa. 442, LEWIS, C. J., says: "If the dominant and servient tenements become vested in the same owner by the common law, the easement is extinguished by unity of title; by the civil, the servitude is lost by confusion; but it is but the name that is gone; the right remains under a higher title."

In Phillips v. Phillips, 48 Pa. 178, 86 Am. Dec. 577, it was held that "servitudes adopted by the owner of the land, which are plainly visible or notorious, and from the character of which it may fairly be presumed that he intended their preservation as necessary to the convenient enjoyment of his property, become, when the lands are divided and pass into other hands, permanent appurtenances thereto; and neither the owner of

the dominant or servient portions of the land has power adversely to interfere with their proper use and enjoyment."

And in that case the principle was broadly reasserted, as follows: "Servitudes which are extinguished by unity of title do not in general revive upon severance; but where they are *apparent* and *obviously continuous,* they do."

To the same general effect are Kirkham v. Sharp, 1 Whart. 323, 29 Am. Dec. 57; Cope v. Grant, 7 Pa. 488; Seibert v. Levan, 8 Pa. 383, 49 Am. Dec. 524.

A conclusive case against the appellee is Pennsylvania R. Co. v. Jones, 50 Pa. 417.

In that case it was held that "a permanent way established by the owner, over his own property and necessary for its convenient use, will not be destroyed by sale or encumbrance."

*H. K. Weand* and *C. H. Stinson,* for appellee.—The term "way" is defined as an "incorporeal hereditament, the right of going over another man's ground." 2 Bl. Com. chap. 3.

In Tapert v. Detroit, G. H. & M. R. Co. 50 Mich. 267, 15 N. W. 450, it was ruled that "a right of way cannot well exist over an undivided interest alone."

PER CURIAM:

The ground occupied by the appellant in passing from one part of his farm to another part thereof is not an "established road or way" within the meaning of the 12th section of the act of February 19, 1849. He has the same right to that ground as to every other part of his farm. He may change his way of passing thereon at will. No other person has any right or interest therein. It is a mere passageway for the convenience of the owner of the land. Its use as such is not protected by any act of assembly, nor by any prescriptive right. It results only from the ownership of the land, and exists only during the will of the owner.

This view, however, does not preclude the appellant from recovering all the damages which he may sustain by reason of the location and construction of the railroad on the property.

Decree affirmed and appeal dismissed, at the costs of the appellant.